# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| CHRISTOPHER H. CLAY,<br><br>         *Plaintiff,*<br><br>v.<br><br>CAMPBELL COUNTY SHERIFF'S OFFICE, ET AL.<br><br>         *Defendants.* | CASE NO. 6:12-cv-00062<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

Plaintiff Christopher H. Clay ("Plaintiff") filed this action against the Campbell County Sheriff's Office (the "Sheriff's Office"), former Sheriff Terry Gaddy ("Gaddy"), and Campbell County, alleging that he was discharged as a deputy sheriff in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; and the Virginians with Disabilities Act ("VDA"), Va. Code § 51.5-40 *et seq.* The Sheriff's Office and Gaddy ("Defendants") have filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] For the following reasons, I will grant Defendants' motion.

## I. BACKGROUND

Plaintiff alleges that he was employed by the Sheriff's Office as a deputy sheriff when, on or about April 2, 2011, he experienced debilitating pain associated with his kidneys. He learned that he had several kidney stones that were causing severe back pain and blood in his urine. He requested sick leave and met with a urologist on April 6, 2011. The urologist advised

---

[1] Campbell County separately filed a motion to dismiss, which I denied as moot after Plaintiff and Campbell County stipulated to the dismissal of Campbell County pursuant to Rule 41(a)(1)(A)(ii).

that Plaintiff undergo a lithotripsy to break up the kidney stones, but he recommended that Plaintiff wait until April 12, 2011, to undergo the procedure, in hopes that Plaintiff would be able to pass the stones on his own. The doctor therefore excused Plaintiff from work until April 12, the date of his next appointment. Plaintiff underwent the lithotripsy, and he was on "no work status" from April 12 until April 18, 2011. Plaintiff alleges that he was placed on suspension by Gaddy, then the Campbell County Sheriff, on April 18, and that his employment was terminated on April 28, 2011. Plaintiff filed a charge of discrimination with the EEOC and received a right to sue letter on July 26, 2012.[2] He then filed this action on October 24, 2012, seeking "equitable relief, reinstatement of benefits, compensatory, liquidated and punitive damages in the amount of $1,000,000.00 (one-million dollars), pre-judgment interest, attorney's fees, costs and other such relief as may be just and equitable."

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

A motion to dismiss for lack of subject-matter jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(1). As a general matter, the plaintiff has the burden of demonstrating that subject-matter jurisdiction properly lies in federal court. *See Evans v. B.F. Perkins Co., a Division of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). "When a defendant challenges subject-matter jurisdiction pursuant to Rule 12(b)(1), 'the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding into one for summary judgment.'" *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). "[I]f

---

[2] The Complaint states that the right to sue letter is attached as Exhibit A, but no such exhibit has been filed. Defendants do not dispute the timeliness of Plaintiff's charge of discrimination or of this lawsuit.

the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law," the Rule 12(b)(1) motion should be granted. *Richmond*, 945 F.2d at 768. Thus, even though the motion is not converted into one for summary judgment, it is effectively the summary judgment standard that applies. Accordingly, reasonable inferences should be drawn in the light most favorable to the nonmoving party. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

### B. Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 679–81 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* In other words, Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

# III. DISCUSSION

## A. Definition of "Disability" Under the ADA

Although Plaintiff alleged violations of Title VII and the VDA in his Complaint, his counsel stated at oral argument that he wished to dismiss those claims; I will therefore focus solely on Plaintiff's ADA claim. The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to . . . discharge of employees." 42 U.S.C. § 12112(a); *see also Young v. United Parcel Serv., Inc.*, 707 F.3d 437, 443 (4th Cir. 2013). "[I]n order to come within the ADA's protected class, a plaintiff must first show that [he] is disabled within the meaning of the Act." *Pollard v. High's of Baltimore, Inc.*, 281 F.3d 462, 467 (4th Cir. 2002). The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A).

Defendants argue that Plaintiff has failed to adequately allege that he has a disability as defined by the ADA because his kidney stones were simply a short-term, temporary medical issue that was resolved in two weeks and did not substantially affect any major life activity.[3] Prior to the enactment of the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008) ("ADAAA"), it was clear in the Fourth Circuit that a temporary medical condition generally did not qualify as a "disability" under the ADA. *See Pollard*, 281 F.3d at 468 ("[A] temporary impairment, such as recuperation from surgery, will generally not qualify as a

---

[3] Plaintiff has only alleged that he had a physical impairment that substantially limits one or more major life activities. He has not alleged that he had a record of such impairment or that he was regarded as having such an impairment. Thus, I only consider whether he has a disability under 42 U.S.C. § 12102(1)(A).

disability under the ADA. An impairment simply cannot be a substantial limitation on a major life activity if it is expected to improve in a relatively short period of time."); *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 199 (4th Cir. 1997) ("[I]t is evident that the term 'disability' does not include temporary medical conditions even if those conditions require extended leaves of absence from work.") (internal citations omitted), *abrogated on other ground by Baird ex rel. Baird v. Rose*, 192 F.3d 462 (4th Cir.1999). Courts addressing the issue often relied on regulations then in effect that provided that "in determining whether an impairment is substantially limiting, courts may consider the 'nature and severity of the impairment,' the 'duration or expected duration of the impairment,' and the 'permanent or long term impact' of the impairment." *Pollard*, 281 F.3d at 467–68 (quoting 29 C.F.R. § 1630.2(j)); *see also Halperin*, 128 F.3d at 199. The Supreme Court had also held, in the context of an impairment limiting the ability to perform manual tasks, that an impairment must "prevent[] or severely restrict[] the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long term." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002).

In passing the ADAAA, however, Congress explicitly found that the Supreme Court's holding in *Toyota* "interpreted the term 'substantially limits' to require a greater degree of limitation than was intended by Congress." 122 Stat. at 3553. Thus, one purpose of the ADAAA was "to reject the standards enunciated by the Supreme Court in [*Toyota*] that the terms 'substantially' and 'major' in the definition of disability under the ADA 'need to be interpreted strictly to create a demanding standard for qualifying as disabled.'" *Id.* at 3554. Congress also expressed its intention that the Equal Employment Opportunity Commission revise the regulations defining the term "substantially limits." *Id.*

The ultimate effect of the ADAAA was to make it easier for plaintiffs to show that they have a "disability" as defined by the ADA. *See* 29 C.F.R. § 1630.2(j)(iv) ("The determination of whether an impairment substantially limits a major life activity requires an individualized assessment. However, in making this assessment, the term "substantially limits" shall be interpreted and applied to require a degree of functional limitation that is lower than the standard for "substantially limits" applied prior to the ADAAA."). The current regulations specify that "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of this section." *Id.* § 1630.2(j)(ii). Significantly, both the statute and the regulations provide that "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D); 29 C.F.R. § 1630.2(j)(vii). Thus, it is possible that kidney stones, if episodic or in remission, could constitute a disability, as long as they "substantially limit a major life activity when active."

Plaintiff has alleged that his kidney stones substantially limit the major life activity of working.[4] He has not alleged, however, that he suffered from a condition that was episodic or chronic in any way. Instead, as Plaintiff's counsel acknowledged at oral argument, Plaintiff suffered from a temporary, one-time issue that was resolved within two weeks. Even applying the more lenient standard in effect after passage of the ADAAA, I find that Plaintiff has failed to adequately allege that he has a physical impairment that "substantially limits" any major life activity. As Defendants' counsel pointed out, to hold otherwise would mean that anyone who

---

[4] Plaintiff also argues that driving and firing a gun are major life activities that were substantially limited by his kidney stones. Many courts have found that driving is not a major life activity. *See, e.g.*, *Jones v. Family Health Center Inc.*, 323 F. Supp. 2d 681, 687–88 (D.S.C. 2003) (collecting cases). As for firing a gun, Plaintiff argued it is a major life activity only insofar as it was required for him to perform his job as a deputy sheriff. Thus, the analysis is the same as that regarding whether his ability to work was substantially limited.

became ill and had to miss work for a period of time would suffer from a "disability" under the ADA. Because I find that Plaintiff has failed to adequately allege that his kidney stones substantially limited a major life activity, I conclude that he is not disabled under the ADA and has therefore failed to state a claim.[5]

## B. Eleventh Amendment Immunity

Even if Plaintiff did suffer from a disability as defined by the ADA, I find that the Eleventh Amendment bars his suit against the Sheriff's Office and against Gaddy in his official capacity.[6] The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state." U.S. Const. amend XI. "The Supreme Court 'has drawn on principles of sovereign immunity to construe the Amendment to establish that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state.'" *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 248 (4th Cir. 2012) (quoting *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990)). The Court has also held that Eleventh Amendment immunity extends to "state agents and state instrumentalities." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). "In Virginia, suits against a Sheriff or her deputies in their official capacities and suits against a Sheriff's Office are suits against the state" for Eleventh Amendment purposes. *Estate of Harvey*

---

[5] Plaintiff has requested leave to amend his complaint. However, because Plaintiff has already admitted that his kidney stones were a one-time issue that was completely resolved within two weeks, I find that amendment would be futile, and I therefore deny Plaintiff's request.

[6] Plaintiff has sued Gaddy in both his individual and official capacities; however, the ADA only provides a cause of action against employers, not against individual supervisors in their individual capacities. *See Jones v. Sternheimer*, 387 F. App'x 366, 368 (4th Cir. 2010); *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999). Moreover, as Gaddy points out, he was no longer the Campbell County Sheriff at the time Plaintiff brought his suit, and therefore lacks any official capacity in which he could be sued. More importantly, while a plaintiff may sue a state official acting in his official capacity for injunctive relief, Plaintiff has not sought injunctive relief in this case, and admitted in his brief that the *Ex Parte Young* exception to the Eleventh Amendment does not apply in this case.

*v. Roanoke City Sheriff's Office*, No. 7:06CV00603, 2007 WL 602091, at *3 (W.D. Va. Feb. 23, 2007); *see also Bland v. Roberts*, 857 F. Supp. 2d 599, 610 (W.D. Va. 2012); *Harris v. Hyter*, 970 F. Supp. 500, 502 (W.D. Va. 1997).

Of course, Eleventh Amendment immunity is not absolute, and there are three exceptions to the constitutional bar. *Lee-Thomas*, 666 F.3d at 248–49. First, "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority." *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (internal quotation marks and alterations omitted). Second, "[a] State remains free to waive its Eleventh Amendment immunity from suit in a federal court." *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002). Third, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Ex Parte Young*, 209 U.S. 123 (1908)). Plaintiff admits that the third exception does not apply in this case, and I conclude that the first two exceptions also do not apply.

First, the Supreme Court has directly rejected Plaintiff's argument that Congress abrogated states' Eleventh Amendment immunity. In *Garrett*, 531 U.S. at 360, the Court held that suits for damages against state officials for failure to comply with Title I of the ADA are barred by the Eleventh Amendment. According to the Court, while Congress unequivocally expressed its intent to abrogate state sovereign immunity, it lacked the constitutional authority to do so. *Id.* at 364–74; *see also Lee-Thomas*, 666 F.3d at 249; *Haley v. Va. Dep't of Health*, No. 4:12-cv-00016, 2012 WL 5494306, at *3 (W.D. Va. Nov. 13, 2012). Thus, Plaintiff cannot rely on the abrogation exception.

Second, Plaintiff argues that Virginia waived its Eleventh Amendment immunity by passing the Virginia Tort Claims Act, Va. Code § 8.01-195.1 *et seq.* This argument has been flatly rejected both in this district, *see Haley*, 2012 WL 5494306, at *5, and by the Fourth Circuit. *See McConnell v. Adams*, 829 F.2d 1319, 1329 (4th Cir. 1987). Despite these precedents, Plaintiff argues that *Lee-Thomas* supports its argument that Virginia has waived its Eleventh Amendment immunity. Plaintiff misapprehends *Lee-Thomas*, in which the Fourth Circuit held only that "when a state's highest court has applied federal law and determined that a state statute effects a waiver of Eleventh Amendment immunity, the federal courts must accord deference to that state court decision." 666 F.3d at 248. The Supreme Court of Virginia has not reviewed whether the state waived its immunity, and the legislature has not indicated any desire or intention to waive it either. *See Haley*, 2012 WL 5494306, at *5. In fact, another court in this district has explicitly rejected the argument based on *Lee-Thomas* that Plaintiff makes here. *See id.* I agree with the analysis in *Haley* and hold that Virginia has not waived its Eleventh Amendment immunity. As a result, since none of the exceptions to Eleventh Amendment immunity apply in this case, I find that this Court lacks subject-matter jurisdiction.

### C. Defendants' Motion for Attorney's Fees

Defendants have moved for an award of attorney's fees pursuant to 42 U.S.C. § 12205, 42 U.S.C. § 2000e-5(k), and Va. Code § 51.5-46(A), which are fee-shifting provisions in the ADA, Title VII, and the VDA, respectively. The federal statutes both permit a court, in its discretion, to award the prevailing party a reasonable attorney's fee. 42 U.S.C. § 12205; 42 U.S.C. § 2000e-5(k). Although the fee-shifting provisions do not distinguish between prevailing plaintiffs and prevailing defendants, and either may recover fees, in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978), the Supreme Court, addressing the Title VII context,

"established a different, more stringent standard governing when prevailing defendants may recover as compared to prevailing plaintiffs." *EEOC v. Great Steaks, Inc.*, 667 F.3d 510, 516 (4th Cir. 2012). Under the standard set forth in *Christiansburg Garment*, "a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." 434 U.S. at 422; *see also Great Steaks*, 667 F.3d at 517. The Fourth Circuit has cautioned that "awarding attorneys' fees to a prevailing defendant is 'a conservative tool, to be used sparingly in those cases [in] which the plaintiff presses a claim which he knew or should have known was groundless, frivolous, or unreasonable.'" *Great Steaks*, 667 F.3d at 517 (quoting *Arnold v. Burger King Corp.,* 719 F.2d 63, 65 (4th Cir. 1983)).

"The attorney's fee provision in the ADA borrows its fee-shifting language from other civil rights statutes, and therefore carries the same underlying policies," *Small v. Dellis*, 211 F.3d 1265, at *2 (4th Cir. 2000) (unpublished), and at least one court in this district has applied the *Christiansburg Garment* standard to fee requests under the ADA, *see Barton v. Lane Co., Inc.*, 1995 WL 835486, at *1 (W.D. Va. Dec. 22, 1995). Moreover, the VDA's fee-shifting provision codifies a virtually identical standard. Va. Code 51.5-46(A) ("[A] defendant shall not be entitled to an award of attorneys' fees unless the court finds that the claim was frivolous, unreasonable or groundless, or brought in bad faith."). Accordingly, I consider Defendants' request for fees pursuant to all three statutes by the same standard—whether Plaintiff's claims were frivolous, unreasonable or groundless.

Applying that standard, I conclude that Defendants are entitled to a reasonable attorney's fees for the Title VII and VDA claims, but not for the ADA claim. Plaintiff alleged in Count II of his Complaint that Defendants violated Title VII even though his factual allegations related

solely to discrimination on the basis of his alleged disability, which is not a protected class under Title VII. *See Rahmaan v. Wal-Mart Stores, Inc.*, No. 2:08-cv-2909, 2010 WL 890057, at *4 (D.S.C. Mar. 8, 2010). He made no allegation whatsoever that he was discriminated against on the basis of "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2, nor did he make any effort to explain how Defendants' actions could have violated Title VII. Although Defendants pointed this out in the brief accompanying their motion to dismiss, Plaintiff failed to address the issue despite continuing to assert he could sue Gaddy individually under Title VII. At the outset of oral argument on Defendants' motion, Plaintiff agreed to drop the Title VII claim without any argument or explanation. Because Plaintiff failed to allege any facts that would support a Title VII claim and failed to provide any explanation for how Title VII could even conceivably provide a plausible cause of action in this case, I find that Plaintiff knew or should have known that such a claim was groundless.

As for the VDA claim, as Defendants pointed out in their brief, the VDA requires that an action under the act must be commenced "within one year of any violation of rights." Va. Code § 51.5-46(B). Plaintiff alleged that he was terminated on April 28, 2011, but he did not file this action until October 24, 2012, well after the one-year statute of limitations had expired. Plaintiff made no argument that the limitations period was not calculated correctly or should be tolled or otherwise did not apply. Furthermore, the fact that the limitations period had passed would have been readily apparent at the time Plaintiff filed suit. Because the statute explicitly barred Plaintiff's VDA claim, I find once again that Plaintiff knew or should have known that such a claim was groundless. Thus, with respect to both the Title VII claim and the VDA claim, I conclude that Defendants are entitled to recover reasonable attorney's fees for defending against those two claims.

With respect to the ADA claim, however, I decline to award attorney's fees to the Defendants. As discussed above, Congress's enactment of the ADAAA quite recently altered the standard for determining when an individual has a disability under the ADA. Thus, I find it was not unreasonable for Plaintiff to argue that his kidney stones constituted a disability. While Plaintiff's arguments regarding Eleventh Amendment immunity were less persuasive in light of relevant precedent, nevertheless, I find that the ADA claim in general was not frivolous, unreasonable, or groundless. I will therefore deny Defendants' request for attorney's fees related to the ADA claim.

## IV. Conclusion

For the foregoing reasons, I will grant the defendants' motion to dismiss. An appropriate order accompanies this memorandum opinion.

The Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

Entered this  26th  day of June, 2013.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE